IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF FLORIDA

PENSACOLA DIVISION


RICKY DEAN KELLY, Plaintiff,

v.

BRYAN F. AYLSTOCK, ESQ., and

AYLSTOCK, WITKIN, KREISS & OVERHOLTZ, PLLC, Defendants.


Case No.: 3:25-cv-01947-TKW-ZCB


**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO MOTION TO REMAND**

Submitted pursuant to Magistrate Judge Zachary C. Bolitho's Order dated November 6, 2025.

Filed: November 12, 2025


**I. PROCEDURAL BACKGROUND**

On November 6, 2025, Magistrate Judge Zachary C. Bolitho entered an order stating that the Court would benefit from hearing the Plaintiff's reply to Defendants' response. This Reply is therefore submitted pursuant to that order and in direct response to Defendants' Response to Plaintiff's Motion to Remand.

Plaintiff Ricky Dean Kelly initially filed this action in the Circuit Court of Escambia County, State of Florida, in August 2025. Before service was properly effected, Defendant Bryan F. Aylstock, Esq., and Aylstock, Witkin, Kreiss & Overholtz, PLLC, engaged in a snap removal to the United States District Court for the Northern District of Florida, Pensacola Division.

Prior to Defendants' first removal, Plaintiff had already prepared a motion in state court seeking to voluntarily dismiss the initial action in order to make corrections to the complaint. However,

1


FILED USDC FLND PN
NOV 17 '25 PM1:37

before Plaintiff had an opportunity to file that motion in the state court, Defendants executed a snap removal, removing the case to federal court.

After that removal, Plaintiff voluntarily dismissed the action without prejudice and filed a new complaint in the Circuit Court of Escambia County, Florida, on October 14, 2025. Plaintiff's decision to dismiss and refile was not limited to adjusting the claim amount, as Defendants contend in their Response; rather, Plaintiff had to make several corrections to the complaint to ensure accuracy.

Defendants again filed a Notice of Removal to this Court. Plaintiff respectfully submits that removal was improper and procedurally defective under 28 U.S.C. §§ 1441 and 1446.

## II. PROPER SERVICE UNDER FLORIDA LAW

Defendants claim in their Response to Plaintiff's Motion to Remand that they were not properly served, relying on federal procedural standards to challenge service that occurred while this action was still pending in state court. However, at the time of service, federal law had no jurisdiction over the case, and service was governed exclusively by Florida law.

Plaintiff Ricky Dean Kelly took every measure possible to ensure strict compliance with Florida law and to avoid another snap removal. With the Defendants history of snap removal, Plaintiff personally drove approximately 750 miles from North Carolina to Pensacola Florida in order to file the complaint in person and coordinate a Florida certified licensed process server to immediately serve the Defendants.

Plaintiff retained Licensed Florida process server Landon McKinnon (Server #582), a well-respected professional with over fourteen years of experience, a certified process server, and one with no prior disputes regarding service. McKinnon was placed on standby to serve the Defendants immediately upon filing of the Complaint.

On October 14, 2025, at 12:35 p.m. (CDT)—just two hours after filing the complaint—Process Server McKinnon personally served both Defendant's Bryan F. Aylstock, Esq., and Aylstock, Witkin, Kreiss & Overholtz, PLLC, in full compliance with Florida Rules of Civil Procedure 1.070(a)–(b) and Chapter 48 of the Florida Statutes.

Following service, Mr. McKinnon provided the completed Returns of Service to Plaintiff later that same day. Because Plaintiff is proceeding pro se and therefore cannot file documents electronically, Plaintiff promptly mailed the executed Returns of Service to both the state and federal courts for filing. The Returns of Service have since been recorded by the clerk.

Mr. Mckinnon also provided a sworn affidavit as further proof of proper service. (Attached as exhibit 1) These official sworn documents conclusively establish that service was valid, timely, and effective under Florida law. Under Florida law, a facially valid return of service constitutes prima facie evidence of valid service of process, and the burden rests upon the defendant to

overcome this presumption by clear and convincing evidence. See Carlisle v. Gamez, 516 So. 2d 306 (Fla. 3d DCA 1987); Slomowitz v. Walker, 429 So. 2d 797 (Fla. 4th DCA 1983); Hollis v. State, 293 So. 2d 617 (Fla. 1974).

Defendants further claim that no attempts were made to serve their registered agent, Mr. Justin Witkin Esq. This statement is false. Process server Mr. Mckinnon made attempts to serve Mr. Witkin but was always informed " he is never here". Such a statement demonstrates that Defendant's failed to comply with Florida Statute 48.091(3), which requires a registered agent to be available at the registered office during regular business hours. This failure cannot be used as a basis to invalidate otherwise proper service. Karen Hood the Operations Manager of the business accepted service and made the statement to Mr. Mckinnon that "we knew this was coming". Clearly referring to the service of Plaintiffs complaint and confirming that Defendants were aware that service was imminent.

Under Florida Statute 48.062(3), if a process server, after due diligence, cannot serve the registered agent of a limited liability company (PLLC), service may properly be made on **ANY** manager of a manager-managed domestic limited liability company. Mr. Mckinnon fully complied with this Statute by serving the firms Operations Manager at Aylstock, Kreis, Witkin & Overholtz, PLLC's principal business address, thereby perfecting valid service under Florida Law. Mr. Mckinnon has stated to Plaintiff that he has made more attempts to serve Mr. Witkin for another client and he has never been there. Here, Mr. Mckinnon is well aware of the correct service of process and knows the proper procedure to serve an LLC. Defendants also claim that no return of service was filed on Mr. Aylstock. This is also false. The filed documents include return of service on both defendants and are part of the court record.

Defendants have offered no clear or convincing evidence to overcome the presumption of proper service. Florida courts consistently hold that once a facially valid return of service is filed, the burden shifts to the defendant to rebut that presumption by clear and convincing proof. See Carlisle, Slomowitz, Hollis, Chase Manhattan Mortg. Corp. v. Dep't of Revenue, 799 So. 2d 1083 (Fla. 4th DCA 2001); Koster v. Sullivan, 160 So. 3d 385 (Fla. 2015). The defendants have failed to provide clear and convincing proof that service was improper. The Plaintiff respectfully requests remand of this case to Escambia County Circuit Court.

### III. DEFENDANTS' IMPROPER SNAP REMOVAL

Defendants incorrectly assert in their Response that Plaintiff claimed snap removal is categorically prohibited. Plaintiff made no such claim. Rather, Plaintiff cited Goodwin v. Reynolds, 757 F.3d 1216 (11th Cir. 2014), solely to illustrate that the Eleventh Circuit disfavors snap removal because it encourages gamesmanship and undermines congressional intent. Defendants' dismissal of Goodwin as mere dicta is misplaced, as the Eleventh Circuit's analysis constitutes binding guidance on the equitable interpretation of the removal statutes and directly supports remand in this case.

Federal courts have repeatedly condemned the practice of snap removal, recognizing that it subverts the intent of Congress and the purpose of the forum-defendant rule. In Goodwin v. Reynolds, 757 F.3d 1216, 1221–22 (11th Cir. 2014), the Eleventh Circuit explained that a plaintiff is entitled to select the forum and that allowing a defendant to remove an action before service (although this case was post service) "would encourage gamesmanship and undermine the fairness principles underlying the removal statutes." Numerous district courts within the Eleventh Circuit have likewise held that pre-service or snap removals are procedurally improper and disfavored, as they deprive plaintiffs of their rightful forum and violate the purpose of 28 U.S.C. § 1441(b)(2).

Courts across the country, including within this Circuit, have similarly rejected snap removals as contrary to both the letter and spirit of the removal statutes. See Bowman v. PHH Mortgage Corp., 423 F. Supp. 3d 1286 (N.D. Ala. 2019); Hawkins v. Cottrell, Inc., 785 F. Supp. 2d 1361 (N.D. Ga. 2011); Perez v. Forest Labs., Inc., 902 F. Supp. 2d 1238 (E.D. Mo. 2012); Gentile v. Biogen Idec, Inc., 934 F. Supp. 2d 313 (D. Mass. 2013).

Here, Defendants' actions exemplify the same type of gamesmanship condemned in Goodwin. Plaintiff filed his corrected lawsuit in the Circuit Court of Escambia County, Florida, on October 14, 2025, at approximately 10:30 a.m. (CDT), and both Defendants were personally served just two hours later at 12:35 p.m. (CDT). Despite having just been served, Defendants raced to remove the case to federal court within hours, before the Plaintiff could mail and have the clerk file the return of service. This "race to the courthouse" behavior is precisely what Goodwin and similar cases describe as an abuse of the removal process that undermines the principles of fairness and proper forum selection.

Within hours, Defendants filed a Notice of Removal in the U.S. District Court for the Northern District of Florida. The removal was procedurally defective and incomplete because Defendants attached only part of the state-court record to their Notice of Removal, violating 28 U.S.C. § 1446(a). The remaining documents were not filed until the following day. Defendants also filed a civil cover sheet that was prepared by the defendant's and never served on Plaintiff, which Plaintiff discovered only later by reviewing PACER.

Because the Notice of Removal was incomplete and obviously performed to move Plaintiffs case to a more desirable forum for the Defendant's, removal was procedurally defective and was a "snappier snap" as discussed in the Ninth District Casola v. Dexcom, Inc., 93F.4thn1044 (9th cir. 2024). "Congress did not intend § 1441 (b)(2) to reward gamesmanship that subverts the statutory design to ensure fairness in removal practice." ("We decline to endorse the practice of "snappier' removals filed before service, as it subverts the fairness principles underlying § 1441(b)(2) the statute was not designed to reward gamesmanship.") The decision effectively closes the door on "snappier" removals within the Ninth Circuit, confirming that such removals are procedurally defective and warrant remand 28U.S.C. § 1447(c). In this case, Defendants Removal was filed immediately after valid service on in-state defendants, remand is required by this Honorable Court to the Circuit Court of Escambia County.

### IV. LACK OF SUBJECT-MATTER JURISDICTION – NO FEDERAL QUESTION OR COMPLETE DIVERSITY

Defendants assert in their answer to Plaintiffs motion that this case belongs in federal court based on diversity jurisdiction. However, this claim is without merit.

There is no complete diversity of citizenship between the parties. Plaintiff is a citizen of North Carolina, and Defendants are citizens of Florida. However, the forum-defendant rule, 28 U.S.C. § 1441(b)(2), prohibits removal to federal court when any defendant is properly joined and served and is a citizen of the state in which the action is brought. Because Defendants are citizens of Florida, and both have been properly joined and served, the case cannot be removed to federal court under diversity jurisdiction.

Although not mentioned in Defendant's Notice of Removal or in their Response to Plaintiff's Motion to Remand. There is no federal question jurisdiction because Plaintiff's claims arise solely under state law, including Professional Negligence, Breach of Fiduciary Duty, Fraud and violations of Florida Rules of Professional Conduct. Federal jurisdiction must appear on the face of the pleaded complaint, and none are present here. Plaintiff's Complaint does not invoke any federal statutes or constitutional provisions, and the issues presented are purely matters of state law. As such, there is no basis for federal question jurisdiction under 28 U.S.C. § 1331.

In Re; Gunn V. Milton, 568 U.S. 251 (2013). The Supreme Court unanimously held that a State-Law Legal Malpractice claim, even one involving an underlying federal issue, does not give rise to federal-question. The Court reasoned that legal malpractice "is a question of state law governed by state standards of care," and that any embedded federal issues are not "substantial" for purposes of § 1331. Likewise, Merrell Dow Pharms. V. Thompson, 478 U.S. 804 (1986), confirms that a mere presence of a federal reference does not convert a state tort into a federal cause of action.

Accordingly, there is no subject-matter jurisdiction in federal court, and removal was improper on both grounds. Plaintiff's case must be remand to Escambia County circuit civil court in the state of Florida.

### V. AMOUNT IN CONTROVERSY REQUIREMENT NOT MET

In their Response to Plaintiff's Motion to Remand, Defendants assert that this case belongs in federal court because the amount in controversy exceeds $75,000, relying on the fact that Plaintiff's previously dismissed complaint did state an amount greater than $75,000. However, that prior case was voluntarily dismissed without prejudice, and the present action was filed as a new lawsuit. The jurisdictional facts must therefore be determined as of the time of filing the October 14, 2025 complaint in the Circuit Court of Escambia County, Florida, not based on a prior, dismissed action.

Plaintiff further clarifies that the amount stated in the earlier, dismissed complaint was mistakenly overstated and was not an accurate reflection of the damages sought. That action was

voluntarily dismissed so that Plaintiff could correct the error and refile a complaint accurately reflecting the true amount in controversy, consistent with both Rule 11(b) of the Federal Rules of Civil Procedure and the jurisdictional requirements of 28 U.S.C. § 1332(a). The present complaint therefore represents a good-faith filing under state law, and Defendants' attempt to rely on the dismissed pleading to establish jurisdiction is both legally and factually unsupported.

When filing the new case, Plaintiff, proceeding pro se, did not complete the civil cover sheet. Under standard procedure, the court clerk's staff completes that administrative document at filing. The clerk's receptionist asked Plaintiff whether the amount in controversy exceeded $75,000; Plaintiff clearly stated that it was under $75,000. The clerk responded that she would mark the appropriate box, which Plaintiff believes was "over $50,000," but Plaintiff cannot confirm this with certainty because he was not provided a copy of the completed civil cover sheet, and it does not appear on the state-court docket for this action.

Plaintiff's Complaint does not specify a sum certain and expressly states that the amount of damages will be determined at trial. However, for purposes of jurisdictional analysis only, Plaintiff affirms that the amount in controversy at the time of filing did not exceed $75,000, consistent with 28 U.S.C. § 1332(a). This clarification is made solely to demonstrate the absence of federal jurisdiction and does not limit Plaintiff's right to prove full damages at trial in state court.

Defendants' reliance on an earlier, dismissed complaint is legally improper. Federal courts uniformly hold that subject-matter jurisdiction must be determined based on the operative complaint at the time of removal. A prior complaint in a separate, dismissed action has no bearing on the amount in controversy in a new filing. See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938); Leonard v. Enterprise Rent-A-Car, 279 F.3d 967, 972 (11th Cir. 2002); Pintando v. Miami-Dade Hous. Agency, 501 F.3d 1241, 1243 n.2 (11th Cir. 2007); Arizona v. Manypenny, 451 U.S. 232, 243 n.17 (1981); Smith v. Mylan Inc., 761 F.3d 1042 (9th Cir. 2014).

Furthermore, the face of Plaintiff's current complaint controls. Plaintiff's Complaint expressly states that damages are "to be determined at trial." Under Lowery v. Alabama Power Co., 483 F.3d 1184 (11th Cir. 2007), and Williams v. Best Buy Co., 269 F.3d 1316 (11th Cir. 2001), the jurisdictional amount must be apparent from the face of the complaint. Because no specific amount is alleged, the removing Defendants cannot satisfy their burden of proving that the amount in controversy exceeds $75,000. Any ambiguity must be resolved in favor of remand, consistent with Burns v. Windsor Ins. Co., 31 F.3d 1092 (11th Cir. 1994).

Accordingly, the amount in controversy in this action does not exceed the $75,000 jurisdictional threshold, and removal was improper on that ground. Plaintiff respectfully requests this Honorable Court remand this case to Escambia County Circuit Civil.

Plaintiff would like to address this Honorable Court about the Defendant's comments in the introduction of their response to Plaintiff's Motion to Remand. Defendants further attempt to portray Plaintiff's case as part of the nationwide 3M Combat Arms Earplug Products Liability Litigation (3m MDL)- one of the largest MDL's in US history, implying that its scale or

6

association with over 300k plaintiff's somehow diminishes the nature of this Malpractice action. This apparent characterization is misleading and legally irrelevant. The Judicial Panel on Multidistrict Litigation created the MDL solely for the purpose of centralized pretrial coordination under 28 USC § 1407, to promote efficiency and avoid duplication of discovery. The MDL "does not merge suits into a single cause, or changes the rights of the parties," In Re Showa Denko K.K L-Tryptophan Prods. Liab. Litig., 953F.2d 162, 165(4th cir)1992), nor does it "effect the substantive rights of the litigants, "Gelboim v. Bank of Am. Corp., 574 U.S. 405,413(2015)

Plaintiff's case was an individual action filed and maintained in Florida, with its own docket number, distinct facts, and separate client-attorney relationship. Plaintiff retained Aylstock, Witkin, Kreiss & Overholtz, PLLC, for personal representation in that individual claim, not as part of a Class Action. The existence of an MDL does not modify Defendants duties under Florida Law, nor does it grant them license to disregard the Rules Regulating the Florida Bar, including Rule 4-1.1 (Competence), Rule 4-1.3 (diligence), Rule 4-1.4 (Competence) and a host of other Rules of Professional Conduct, which apply equally to all Attorney's practicing within the State of Florida.

Plaintiff's Malpractice claim arises solely from Defendants conduct within the Attorney-Client relationship. Nothing in the federal MDL law or Florida Jurisprudence provides that participation in an MDL relieves counsel of their obligations of professional care, loyalty, and communication to individual clients. See The Florida Bar v. Moore, 194 So. 3d 1013,1020 (Fla. 2016) (Attorney owes full professional duty to each client regardless of caseload). Plaintiff expressly disclaims any challenge to the MDL itself or its procedures when all of the rules and procedures are followed as intended by law; rather, Plaintiff seeks relief for Defendants violations of Florida Law governing professional conduct.

Accordingly, Defendants attempts to invoke the scale of the 3M MDL to minimize or reframe Plaintiffs malpractice action is unsupported by law and irrelevant to jurisdiction. The MDL's procedural coordination does not alter substantive rights or immunize counsel from accountability under state law.

Pursuant to 28 U.S.C § 1447(c), Plaintiff respectfully requests reimbursement of reasonable costs and expenses incurred as a result of the improper removal. Plaintiff does not seek attorneys fees.

In Closing, Plaintiff respectfully requests this Honorable Court to Remand Plaintiffs case to the First Judicial Circuit Court of Florida in and for Escambia County and grant any other relief deemed just and proper.

Respectfully submitted this 12th day of November, 2025.

*[signature]*

Ricky Dean Kelly, Plaintiff (Pro Se)

3772 Merks Place

Leland, NC 28451

Tel: 919-524-1747

Email: kellyricky@bellsouth.net

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of November, 2025, a true and correct copy of the foregoing Plaintiff's Reply to Defendants' Response to Motion to Remand was mailed via United States Postal Service to the following. Plaintiff also certifies a copy has been mailed to The United States District Court for the Northern District of Florida Pensacola Division for filing by the clerk.

Steven Echsner, Esq.

Aylstock, Witkin, Kreiss & Overholtz, PLLC

17 East Main Street, Suite 200

Pensacola, FL 32502

Gregory K. Rittig, Esq.

Jason T. Keaton, Esq.

Lloyd, Gray, Whitehead & Monroe, P.C.

880 Montclair Road, Suite 100

Birmingham, AL 35213

*[signature]*

Ricky Dean Kelly, Plaintiff (Pro Se)

EXHIBIT 1 – AFFIDAVIT OF SERVICE (LANDON MCKINNON)

Filed contemporaneously with this Reply.

# GENERAL AFFIDAVIT

State of **FLORIDA**

County of **Escambia**

Before me this day personally appeared _____**Landon McKinnon**_____ who, being duly sworn deposes and says:
<br>*affiant*

On October 14, 2025 @ approximaitly 12:35 p.m. Process Server Landon McKinnon attempted service on Bryan F. Aylstock, Esq. and the Law Firm "Aylstock, Witkin, Kreiss & Overholtz, PLLC". Process Server spoke first with the receptionist "Haley Leavitt" who stated Mr. Aylstock was not availiable. Process Server then asked if the registered agent "Justin Witkin" was avaliable in which they were not. Process Server stated that he needed to serve the paperwork to the highest known person at the Firm at that time. Kara Hood "Operations Manager" arrived at the front desk to accept service in the absence of Mr. Alystock and the Registered Agent. Ms. Hood accepted the court writ stating "we knew this was comming". Process Server thanked them for their time and departed the area.

_____
*signature of affiant*

Sworn to (or affirmed) and subscribed before me by means of ☒ physical presence or ☐ online notarization this **12** day of **November**, 20**25**, by _____**Landon McKinnon**_____ who ☐ is personally known to me or ☒ produced a **Florida Driver License** as identification.

JOSHUA DEVAUGHN WILLIAMS SR
Notary Public - State of Florida
Commission # HH 496090
My Comm. Expires Feb 25, 2028
Bonded through National Notary Assn.

_____
notary public signature

Joshua Dwilliams Sr
notary public printed name

FL-2007-AFF                           www.NotaryFL.com provides this affidavit pursuant to Florida Statutes §117.05(13)(a)