UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RICKY DEAN KELLY,
      Plaintiff,

vs.                     Case No.:  3:25cv1947/TKW/ZCB

BRYAN F. AYLSTOCK and
AYLSTOCK, WITKIN, KREISS &
OVERHOLTZ,
      Defendants.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff filed this case in state court.  Defendants promptly removed it to federal court.  Plaintiff has moved to remand.  (Doc. 8).  Defendants have responded in opposition to the motion to remand, and Plaintiff has replied.  (Docs. 10, 13).  The matter is ripe for resolution.  For the reasons below, Plaintiff's motion to remand should be denied.

## I.  Discussion

On October 14, 2025, Plaintiff filed this action in the First Judicial Circuit Court for Escambia County.[1] (Doc. 1-1).  The complaint alleges

---

[1] Plaintiff previously filed a complaint in state court raising the same claims as the current complaint.  (Doc. 1-1, Case No. 3:25-cv-01649). Defendants removed the case, and Plaintiff then voluntarily dismissed it.

that Defendants, Attorney Bryan F. Aylstock and the law firm of Aylstock, Witkin, Kreis & Overholtz (AWKO), committed legal malpractice when representing Plaintiff in a multidistrict litigation case involving defective earplugs. Defendants subsequently removed the current action to federal court under 28 U.S.C. §§ 1332, 1441, and 1446. (Doc. 1). Plaintiff responded by filing a motion to remand. (Doc. 8).

In the motion, Plaintiff challenges Defendants' removal on two grounds. First, he claims that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy does not exceed $75,000. (Doc. 8 at 7, 12-13). Second, he claims that removal was improper under the "forum defendant rule" found in 28 U.S.C. § 1441(b)(2). (Doc. 8 at 2). The Court will address both arguments below.

## A. The amount in controversy likely exceeds $75,000.

Plaintiff's complaint does not specify how much money he seeks in damages. (Doc. 1-1). In his motion to remand, however, Plaintiff avers that the amount in controversy is more than $50,000 but less than $75,000. (Doc. 8 at 7). Thus, Plaintiff says removal was improper

---

(Docs. 8, 9, Case No. 3:25-cv-01649). Plaintiff then filed the current complaint in state court, which Defendants again removed.

because this Court lacks diversity jurisdiction under 28 U.S.C. § 1332(a). Defendants disagree, arguing that the amount in controversy exceeds $75,000.  (Doc. 10 at 14-15).

"If a plaintiff makes an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds . . . the jurisdictional requirement [of $75,000]."  *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (cleaned up).  In determining whether the amount in controversy requirement is met, "the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed."  *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001).  "[D]efendants may submit a wide range of evidence in order to satisfy the jurisdictional requirements of removal."  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 755 (11th Cir. 2010).

Here, Defendants have shown by a preponderance of the evidence that the amount in controversy likely exceeds $75,000.[2]  Defendants have

---

[2] The Court provided the parties with the opportunity to supplement the record with evidence regarding the amount in controversy requirement. (Doc. 18).  And they have done so.  (Docs. 19, 20, 24).

pointed to Plaintiff's request for an award of damages "reflecting the true value of his claims had they been individually evaluated and pursued." (Doc. 1-1 at 14). As Defendants note, Plaintiff believes in the strength of his case compared to bellwether trials from the underlying multidistrict litigation. Those bellwether trials produced verdicts ranging from $1.7 million to $77.5 million. (Doc. 20-1 at 5). Moreover, Defendants have provided an affidavit stating that the value of the settlement Plaintiff received in the underlying multidistrict litigation exceeded the amount in controversy requirement. (Doc. 24).

It is also clear to the Court from Plaintiff's filings that he is seeking to recover more than $75,000 in damages. Indeed, Plaintiff "clarifies" that his statement that his damages are more than $50,000 but less than $75,000 "is made solely to demonstrate the absence of federal jurisdiction and does not limit Plaintiff's right to prove full damages at trial . . . ."[3] (Doc. 13 at 6); *see also* (Doc. 19 at 2) (noting that his supplemental

---

[3] Thus, this is not a case where a plaintiff has stipulated that he will not accept more than $75,000 in damages were this matter remanded to state court. *See, e.g., Brooks v. Pre-Paid Legal Servs.*, 153 F. Supp.2d 1299, 1300 (M.D. Ala. 2001) (remanding where the plaintiff stipulated post-removal that he would not accept a judgment in excess of $74,500 in state court upon remand).

declaration "is not intended to limit any recovery otherwise available under state law should this action be remanded"). And in Plaintiff's previous (and nearly identical) original complaint, he sought damages of $1,100,000. *Kelly v. Aylstock*, Case No. 3:25-cv-01649 (Doc. 1-1 at 14). Nothing of substance has changed since Plaintiff filed his complaint in Case No. 3:25-cv-01649 that could lead the Court to reasonably conclude that Plaintiff is now seeking $75,000 or less in damages when he recently sought $1,100,000 in damages for identical claims. (*See* Doc. 20-1 at 4). Because the Court finds by a preponderance of the evidence that the amount in controversy likely exceeds $75,000, the Court rejects Plaintiff's argument that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332(a).

## B. The "forum defendant rule" does not require remand.

Plaintiff also claims that remand is required based on the "forum defendant rule" found in 28 U.S.C. § 1441(b)(2). (Doc. 8 at 9-11). Defendants disagree. According to Defendants, § 1441(b)(2) only bars a removal that occurs *after* proper service, and Defendants argue they removed this action *before* proper service. Plaintiff says Defendants are wrong for two reasons. First, Plaintiff claims that the removal occurred

after proper service.  Second, Plaintiff says that even if Defendants were not properly served when removal occurred, the removal was an impermissible snap removal.  The Court will first explain the governing statutory scheme, then it will discuss whether Defendants were properly served, and finally it will address the snap removal issue.

### 1.  Overview of the statutory scheme.

The general rule is that a civil case filed in state court can be removed to a federal district court that would have had original jurisdiction over the case.  28 U.S.C. § 1441(a).  Federal district courts have original jurisdiction over cases raising federal questions ("federal question jurisdiction") and cases involving citizens of different states with an amount in controversy exceeding $75,000 ("diversity jurisdiction").  28 U.S.C. §§ 1331, 1332.  Thus, federal question cases and diversity cases generally can be removed under § 1441(a).  But—as with nearly all legal rules—there are exceptions.

The exception at issue here is the so called "forum defendant rule" found in § 1441(b)(2).  According to § 1441(b)(2), an action that is removed solely based on diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen

of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Put another way, "[e]ven where there is complete diversity between the parties, . . . a defendant may not remove a case brought in a state court sitting in the same state in which any properly joined and served defendant is a citizen." *North v. Precision Airmotive Corp.*, 600 F. Supp. 2d 1263, 1267 (M.D. Fla. 2009).

In this case, it is undisputed that Defendants are citizens of the State in which this action was brought—i.e., Florida. Thus, they are "forum defendants." There is a dispute, however, regarding whether Defendants were properly served when removal occurred. The Court now turns to that dispute.

### 2. Defendants were not properly served.

At 10:18 a.m. on October 14, 2025, Plaintiff filed a complaint against Defendants in the First Judicial Circuit Court for Escambia County. (Doc. 1-1 at 2). Plaintiff promptly engaged a certified process server to serve Defendants. At approximately 12:35 p.m. on October 14, 2025, the process server arrived at Defendant AWKO's office to attempt service. (Doc. 13 at 10). The process server was informed that neither Defendant Aylstock nor Defendant AWKO's registered agent, Justin

Witkin, were available. (*Id*.). So, the process server handed the summons and complaint to Kara Hood, AWKO's Operations Manager. (*Id*.). The process server then completed a return of service, which stated that Defendants Aylstock and AWKO had been served on October 14, 2025, at 12:35 p.m. by "corporate/service on a statutory officer." (Doc. 8-1 at 8-11). The statutory officer was identified as "Kara Hood." (*Id*.).

The present dispute centers on the legal import of the process server providing the summons and complaint to Ms. Hood. More specifically, the question is as follows: Was Ms. Hood an individual authorized to accept service on behalf of Defendants Aylstock and AWKO? Answering that question requires the Court to examine Rule 4 of the Federal Rules of Civil Procedure.

### a. Defendant Aylstock

There is an individual Defendant (Bryan Aylstock) and a business entity Defendant in this case (AWKO). Looking first to Defendant Aylstock, Rule 4(e) provides that an individual defendant may be served in several different ways. The first way is by personally delivering the summons and complaint to the individual defendant. Fed. R. Civ. P. 4(e)(2)(A). The second way is by leaving the summons and complaint at

the individual defendant's residence "with someone of suitable age and discretion who resides there."  Fed. R. Civ. P. 4(e)(2)(B).  The third way is delivery of the summons and complaint "to an agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(e)(2)(C).  Finally, service may be accomplished by following the service laws of either the state where the federal court hearing the case is located or the state where service is made.  Fed. R. Civ. P. 4(e)(1).  Thus, the Court must look to Fla. Stat. § 48.031, which is the Florida statute governing service on individual defendants.  Section 48.031 provides that an individual defendant may be served by personally serving the defendant or "by leaving copies at his or her usual place abode with any person residing therein who is 15 years of age or older and informing the person of their contents."  Fla. Stat. § 48.031(1)(a).[4]

Plaintiff says that Defendant Aylstock was properly served under Rule 4(e)(2)(C) because Ms. Hood was "an agent authorized by appointment or by law to receive service of process" on behalf of

---

[4] There is no dispute that Defendant Aylstock was neither personally served nor was a copy of the summons and complaint left at his residence with a person of suitable age.  Defendant Aylstock, therefore, was not served under Fla. Stat. § 48.031(1)(a).

Defendant Aylstock.  Defendant Aylstock, however, denies that Ms. Hood was an agent authorized to receive service on his behalf.

"It is well established that where a plaintiff claims that the person on whom process was served was a defendant's agent, the plaintiff must present facts and circumstances showing that the agent had specific authority, express or implied, to receive service of process on the defendant's behalf." *Purple Innovation, LLC v. Waykar, Inc.*, No. 8:25-cv-266, 2025 WL 2494247, at *9 (M.D. Fla. Aug. 29, 2025).  "Claims by an agent of having authority to receive process or the fact that an agent actually accepts process is not enough to bind the defendant to the court's jurisdiction; there must be evidence that the defendant intended to confer that authority upon the agent in order to satisfy the terms of Rule 4(e)(2)." *Hill v. Caruso*, No. 1:22-cv-02193, 2023 WL 4996587, at *6 (N.D. Ga. Feb. 16, 2023).

Here, Plaintiff has not shown that Defendant Aylstock authorized Ms. Hood to be his agent for service of process purposes.  Plaintiff simply relies on the fact that Ms. Hood was the Operations Manager of the law firm where Defendant Aylstock works.  But Ms. Hood's status as Defendant Aylstock's coworker or employee does not make her his

authorized agent for service purposes.  *See Lowe v. Hart*, 157 F.R.D. 550, 552 (M.D. Fla. 1994) (finding that providing service documents to the defendant's coworker was insufficient service); *see also Vibe Ener v. Duckenfield*, No. 20-cv-22886, 2020 WL 6373419, at *6 (S.D. Fla. Sept. 29, 2020) (holding that office manager of the company where the defendant worked was not his authorized agent for service of process); *Etris v. Snyder*, No. 2:10-CV-00113, 2012 WL 692811, at *4 (N.D. Ga. Mar. 1, 2012) (finding that defendant was not properly served where process server left documents with the defendant's coworker). Accordingly, Defendant Aylstock was not properly served on October 14, 2025.

### b. Defendant AWKO

The other named Defendant is AWKO, which is a Florida limited liability company.  (Doc. 10-1).  Under Rule 4(h), a limited liability company may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1)(B).  Additionally, a limited liability company may

be served in the manner prescribed by Florida law. Fed. R. Civ. P. 4(h)(1)(A), 4(e)(1).

Looking first to Rule 4(h)(1)(B), Ms. Hood was not "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Ms. Hood was the Operations Manager of Defendant AWKO. She was not an officer, managing or general agent, or any other agent authorized to receive service of process for Defendant AWKO. According to the Florida Department of Corporations, the registered agent authorized to receive service of process for Defendant AWKO was Justin Witkin. (Doc. 10-1 at 1). And the managing members of Defendant AWKO were Bryan Aylstock, Justin Witkin, and Douglass Kreis. (*Id.* at 2). Because none of those individuals were served with the summons and complaint, Defendant AWKO was not properly served under Rule 4(h)(1)(B).

The same is true with respect to service under Florida law. Service on a limited liability company in Florida is governed by Fla. Stat. § 48.062. That statute provides that a "domestic limited liability company . . . may be served with process required or authorized by law by service on its registered agent designated by the domestic limited liability

company . . . ." Fla. Stat. § 48.062(2).  The statute further provides that if the registered agent cannot be served "after one good faith attempt because of a failure to comply with this chapter or chapter 605, the process may be served on . . . (a) Any manager of a manager-managed domestic limited liability company . . . (b) Any member of a member-managed domestic limited liability company . . . (c) Any person listed publicly by the domestic limited liability company . . . on its latest annual report, as most recently amended."  Fla. Stat. § 48.062(3).

As previously explained, the registered agent for Defendant AWKO was not Ms. Hood.  It was Justin Witkin.  (Doc. 10-1 at 1)  And the managing members were Bryan Aylstock, Justin Witkin, and Douglass Kreis.  (*Id.* at 2).  Moreover, there is no indication that Ms. Hood was listed publicly on Defendant AWKO's latest annual report.  Accordingly, Defendant AWKO was not properly served under Fla. Stat. § 48.062.

In reaching this conclusion, the Court did not overlook Plaintiff's argument that as the Operations Manager, Ms. Hood qualifies as "any manager of a manager-managed" limited liability company under Fla. Stat. § 48.062(3)(a).  The problem with Plaintiff's argument is that the term "manager" when used in the context of a "manager-managed"

limited liability company is a legal term of art.  It does not mean any person who has the word "manager" in his or her job title.  Rather, in this context the term "manager" is defined as "a person who, under the operating agreement of a manager-managed limited liability company, is responsible, alone or in concert with others, for performing the management functions" of the company.  Fla. Stat. § 605.0102(38).[5]

It is clear from the information provided by the parties that Ms. Hood is not a "manager" of Defendant AWKO for purposes of Fla. Stat. § 48.062(3)(a).  Thus, serving Ms. Hood with the summons and complaint was insufficient to properly serve Defendant AWKO.  *See generally Vibe Ener*, 2020 WL 6373419, at *7 (finding that limited liability company was not properly served where the process server provided service documents to the company's "office manager").

### 3. Snap removals are permissible.

Plaintiff further argues that if Defendants were not properly served, then remand is necessary because the removal was an improper snap removal.  (Doc. 8 at 3, 10-11).  Defendants respond by arguing that

---

[5] There are specific rules regarding how "managers" of "manager-managed" limited liability companies are selected and who may serve as a "manager."  *See* Fla. Stat. § 605.04072.

remand is unwarranted because snap removals are permissible.  (Doc. 10 at 2-7).  The Court agrees with Defendants.

"A defendant's removal of a case with complete diversity, but before a forum defendant is served with process, is called a 'snap' removal."  *In re: Depo-Provera Prods. Liab. Litig.*, No. 3:25-MD-3140, 2025 WL 3252445, at *1 (N.D Fla. Nov. 13, 2025).  The Eleventh Circuit has not specifically addressed the propriety of snap removals.[6]  But the Second, Third, and Fifth Circuits have confronted the issue and upheld snap removals.[7]  *Id.* at *2.  Those courts have explained that the plain text of 28 U.S.C. § 1441(b)(2) only forbids removal if the plaintiff had properly

---

[6] The Eleventh Circuit has stated, however, in an unpublished decision on a different issue that "nothing in the removal statute, or any other legal provision, requires that a defendant be served with the complaint before filing a notice of removal."  *Whitehurst v. Wal-Mart*, 306 F. App'x 446, 448 (11th Cir. 2008).

[7] *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019) ("By its text, then, Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law . . . ."); *Encompass Ins. Co. v. Stone Mansion Restaurant Inc.*, 902 F.3d 147, 152 (3d Cir. 2018) ("Starting with the text, we conclude that the language of the forum defendant rule in section 1441(b)(2) is unambiguous.  Its plain meaning precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served."); *Texas Brine Co., LLC v. Am. Arbit. Assoc., Inc.*, 955 F.3d 482, 486 (5th Cir. 2020) (agreeing with the Second and Third Circuits that the forum defendant rule found in § 1441(b)(2) "is inapplicable until a home-state defendant has been served").

served the forum defendant before removal.[8]  To use the words of the Second Circuit, "[b]y its text . . . Section 1441(b)(2) is inapplicable until a home-state defendant has been served . . . ; until then, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can assume jurisdiction over the action." *Gibbons*, 919 F.3d at 705.

Consistent with the decisions of the Second, Third, and Fifth Circuits, another judge on this Court recently found that § 1441(b)(2) does not bar snap removals. *See In re: Depo-Provera Prods. Liab. Litig.*, No. 3:25-MD-3140, 2025 WL 3252445, at *3 (N.D. Fla. Nov. 13, 2025) (finding that the defendant's "snap removal was proper" based on the plain text of § 1441(b)(2)).  Other district courts both inside and outside of the Eleventh Circuit have reached the same conclusion.  *See Sunbelt Rentals, Inc. v. Cox*, 2:24-cv-947, 2024 WL 5049592, at *5 (M.D. Fla. Dec. 10, 2024) ("Removal of a case before a named forum defendant is served is authorized by 28 U.S.C. § 1441(b)(2)."); *see also Logan v. McKinney*

---

[8] The Court is unaware of any circuit court that has held otherwise. Although Plaintiff's reply brief (Doc. 13 at 4) cites *Casola v. Dexcom*, 98 F.4th 947 (9th Cir. 2024), that decision specifically refused to address whether "pre-service snap removals are permissible under 28 U.S.C. § 1441(b)(2)." *Casola*, 98 F.4th at 964.  Thus, *Casola* does not speak to the issue currently before the Court.

*Drilling, LLC*, No. CV 1:20-00268, 2021 WL 354462, at *6 (S.D. Ala. Feb. 2, 2021) ("The Court finds the language of Section 1441(b)(2) to be unambiguous. The Resident Defendant Rule is not implicated until a forum defendant has been served under state law."); *Androus v. Androus*, 747 F. Supp. 3d 904, 909 (E.D. Va. 2024) ("Having reviewed the parties' briefs and the developing body of law around snap removal, this Court finds it must adhere to Section 1441(b)(2)'s plain text and that Defendant's removal was proper.").

But that view is not universal. Some district courts (inside and outside of the Eleventh Circuit) have held that "remand is appropriate in snap removal cases." *See Rising Phoenix Holding Corp. v. Ross*, No. 22-CV-62147, 2023 WL 1992318, at *3 (S.D. Fla. Jan 5, 2023) (rejecting the reasoning of the Second and Third Circuits and finding snap removal impermissible); *see also Deutsche Bank Nat'l Trust Co. v. Old Republic Title Ins. Group, Inc.*, 532 F. Supp. 3d 1004, 1018 (D. Nev. 2021) ("Snap removal is not a result that Congress contemplated or intended, and permitting it would obviate the forum defendant rule's purpose."). The judges reaching that conclusion have done so based on their view of the purpose and legislative intent of the forum defendant rule. *See*

17

*Delaughder v. Colonial Pipeline Co.*, 360 F. Supp. 3d 1372, 1379-80 (N.D. Ga. 2018) (relying on the "purpose of the forum defendant rule" and "Congress's intent in enacting the statute" to determine that snap removal was improper); *see also Spreizter Props., LLC v. Travelers Corp.*, 599 F. Supp. 3d 774, 782 (N.D. Ia. 2022) ("District courts who have found snap removals improper tend to look at the purpose of the forum defendant rule, congressional intent, and whether allowing snap removals would produce an absurd result.").

Having carefully considered the matter, the undersigned agrees with the Second, Third, and Fifth Circuits. When "the statutory text is plain and unambiguous," courts "must apply the statute according to its terms." *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009). That is because "Congress says in a statute what it means and means in a statute what it says there." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (cleaned up). Applying that principle here, the plain and unambiguous text of § 1441(b)(2) only forbids removal if a forum defendant was "properly joined *and served*" at the time of

removal.[9]   28 U.S.C. § 1441(b)(2) (emphasis added).   Here, neither Defendant Aylstock nor Defendant AWKO were properly served when this action was removed.  As a result, the forum defendant rule found in § 1441(b)(2) does not require remand.  The only way to reach the result sought by Plaintiff would be for the Court to effectively take a red pen to § 1441(b)(2) and cross out the words "and served" from the statutory text. But courts "are not allowed to add or subtract words from a statute; we cannot rewrite it."  *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1224 (11th Cir. 2009).  That is true, even if "doing so

---

[9] A court can depart from the text of a statute "if giving the words of a statute their plain and ordinary meaning produces a result that is not just unwise but is clearly absurd."  *CBS Inc. v. PrimeTime24 Joint Venture*, 245 F.3d 1217, 1228 (11th Cir. 2001) (cleaned up).  This exception, however, "is rarely applied, because the result produced by the plain meaning canon must be truly absurd before the principle trumps it."  *Id.* (cleaned up).  Thus, a court may not depart from the statutory text "merely because it produces results that a court or litigant finds anomalous or perhaps unwise."  *Gibbons*, 919 F.3d at 705.  The current case is not one of the rare ones where following the plain text would lead to a truly absurd result.  As the Second Circuit put it, "the result here— that a home-state defendant may in limited circumstances remove actions filed in state court on the basis of diversity of citizenship— . . . is neither absurd nor fundamentally unfair."  *Id.* at 707; *see also Encompass Ins. Co.*, 902 F.3d at 153 (explaining that applying the plain text of § 1441(b)(2) "does not defy rationality or render the statute nonsensical or superfluous").

would, in the court's view, better further the purpose it thinks Congress had in mind." *In re Hedrick*, 524 F.3d 1175, 1187-88 (11th Cir. 2008).

In an effort to avoid the conclusion required by the statute's plain text, Plaintiff points to the Eleventh Circuit's decision in *Goodwin v. Reynolds*, 757 F.3d 1216 (11th Cir. 2014). But the language from *Goodwin* on which Plaintiff relies is undisputedly dicta.[10] *See Lan Li Walsh*, No. 9:16-cv-81871, 2019 WL 12267185, at *2 (S.D. Fla. July 3, 2019) (referring to *Goodwin*'s discussion of snap removal issue as "dicta"); *see also Frenz v. Costco Wholesale Corp.*, 2:23-cv-517, 2023 WL 12143307, at *2 (N.D. Ala. May 10, 2023) (same).[11] Indeed, the *Goodwin* court specifically stated that the district court's conclusion that the case was

---

[10] "All statements that go beyond the facts of the case . . . are dicta. And dicta is not binding on anyone for any purpose." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010).

[11] Some courts have reached the opposite conclusion and relied on *Goodwin*'s dicta to find snap removals improper. *See Timbercreek Asset Mgmt., Inc. v. De Guardiola*, No. 9:19-CV-80062, 2019 WL 947279, at *2-4 (S.D. Fla. Feb. 27, 2019) (recognizing that *Goodwin*'s discussion of snap removals was "dicta," but relying on it to find snap removal improper); *see also Rising Phoenix Holding Corp. v. Ross*, No. 22-CV-62147, 2023 WL 1992318, at *2-3 (S.D. Fla. Jan. 5, 2023) (same). The decisions that have reached that conclusion have focused more on the "purpose" of § 1441(b)(2) and less on its text. "[B]ut purposes, obvious or otherwise, provide no basis for skirting a statute's plain language." *United States v. Pate*, 84 F.4th 1196, 1206 (11th Cir. 2023).

removable because the forum defendant had not been served "is not before us, and we assume *arguendo* that it is correct."[12]  *Goodwin*, 757 F.3d at 1221 (emphasis added).  Because the *Goodwin* court's dicta is insufficient to overcome the plain text of the statute and the persuasive reasoning of the three circuit courts of appeals that have upheld snap removals, the Court rejects Plaintiff's argument that *Goodwin* requires remand.[13]

---

[12] The issue before the Eleventh Circuit in *Goodwin* was whether the district court abused its discretion by allowing the plaintiff to voluntarily dismiss the action without prejudice to avoid the snap removal. *Goodwin*, 757 F.3d at 1218.  In finding no abuse of discretion, the Eleventh Circuit "assum[ed] *arguendo* that this case was removable."  *Id*. at 1222.  Thus, the question of whether the snap removal was proper was not before the *Goodwin* court.

[13] Little needs to be said about Plaintiff's argument that remand is required because Defendants failed to file, at the time of removal, all the documents required by 28 U.S.C. § 1446(a).  (*See* Doc. 8 at 12).  Section 1446(a) requires a defendant to file a notice of removal that contains a "short plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."  According to Plaintiff, there are twenty-four pages of documents that Defendants did not file until the day after removal.  (Doc. 8 at 12; Doc. 13 at 4).  Plaintiff does not explain what those documents were, although it is clear to the Court that all documents required by § 1446(a) are now part of the record in this case.  Indeed, Plaintiff appears to admit that any missing documents were filed the day after removal.  (Doc. 13 at 4).  And the Eleventh Circuit has said that "[a]ny documents missing from the removal record can be supplied at a later time."  *Hooker v. Sec'y, Dep't of Veterans Affairs*, 599 F. App'x 857, 860 (11th Cir. 2014).  Moreover, "[t]he failure to include all state

## II.   Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that

Plaintiff's motion to remand (Doc. 8) be **DENIED**.

At Pensacola, Florida, this 16th day of January 2026.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## **Notice to the Parties**

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.   Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

---

court pleadings and process with the notice of removal is procedurally incorrect but is not a jurisdictional defect." *Id.* (cleaned up); *see also May v. Tucker*, No. CV215-053, 2016 WL 676451, at *4 (S.D. Ga. Jan 22, 2016) (explaining that "the Defendants' omission of the process papers and state-court orders from their Notice of Removal" did not require remand because "[w]hile perhaps the failure to include these documents was a defect in the removal procedure, this defect was relatively minor and was cured by the eventual filing of the documents upon the docket of this case").